UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal Case No. 23-CR-07 (DSD/JFD)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>RIVER WILLIAM SMITH,<br><br>    Defendant. | **DECLARATION OF<br>RIVER WILLIAM SMITH** |

Your Declarant, River William Smith, deposes and states:

1. I am the Defendant in the above-captioned case. I submit this Declaration to correct or clarify testimony about me by FBI agent Erin Tobin at the evidentiary hearing on January 24, 2024.

2. Agent Tobin testified that I stated in a text to an FBI informant on November 25, 2022 that my father once called police on me because I was suicidal. This did not happen, and it is an inaccurate description of what I told the informant. My father would not call the police because he is a criminal and lives in the woods in Montana to avoid police. 1-2 months before my arrest, my father told me on the phone that he was very depressed and would probably kill himself if I did not visit him. My attorney has shown me a transcript of my conversation with the FBI informant on November 28, 2022. I had told the informant about another incident where my father called my mother and tried to convince her that I was suicidal. This was my father's manipulation. I have never been suicidal.

3. Agent Tobin testified about a conversation where I told the FBI agent that if I got caught with auto sears I would be dead and would have a note on me. It should be noted that the agents did not recover any note when they arrested me. They have never produced any such note as evidence. I never actually prepared such a note. My statement to the informant about the note, like many of my statements to the informant, was not true and not even intended as serious. The informant expressed racist and extremist views. I was desperate for a friend, and wanted to impress him. I regret and am embarrassed by many of my statements to the FBI informants, but they were mostly untrue.

4. Agent Tobin testified that I had previously researched whether the Mall of America had metal detectors. The implication was that I was planning to do a shooting at the Mall. This is false. The reason that I researched this information is because I planned to shop at the mall. Since I normally carried a gun, I wanted to find out if it would be a problem to bring my gun. The last time I shopped at the Mall was approximately six months before my arrest when I brought sunglasses.

5. Agent Tobin testified about me going to the Savage police department, which she claimed was evidence that I planned to do some sort of revenge shooting after my arrest in 2019. This is ridiculous. The only time that I went to the Savage police statement was to report crimes. While I was on probation, my house was vandalized by the people who had previously robbed me, and I reported it to the police. On another occasion, one

of the people was watching me from a car down the block from my house, and I went to report the incident. Unfortunately the police did not do anything.

6. Agent Tobin testified that my internet history had a reference to "future martyr." The context for this search was that was that someone using that name was trying to sell me a bullet proof helmet on the internet. It has since been revealed in discovery that this was one of the FBI informant's accounts that he was using to make contact with me. The FBI is being very misleading by suggesting that my search of this name indicated that I actually planned to be a martyr.

7. Agent Tobin referenced phone conversations that I had with my grandmother where I said I was comfortable with what I was accused of or had not done anything. These statements are also taken out of context. My point was that I had not caused harm to other people. I had not committed any act of violence and had not damaged anyone through any sort of fraud. As I stated in my prior letter to the Court, I do believe there is unfairness about my case, and I do believe it is extremely unjust that the government is seeking such extreme punishment when I have not harmed or tried to harm anyone. However, as I also stated to the probation officer and in my letter to the Court, I do recognize that I committed a criminal offense, and that is why I plead guilty.

8. Agent Tobin referenced a phone conversation where I discussed wanting to get a private message to my grandmother and that next time I was arrested it would be 25 years to life. The context for this conversation was that I was afraid that the government

3

would entrap me after I was released, and because of I would then have a record, I would be facing a lot more time. The private message I wanted to get to my grandmother was about plans to leave the country after I was released from prison in order to avoid more trouble. I wanted the message to be private because I was afraid that FBI would stop me from leaving. I recognize that my thinking was somewhat paranoid. It was due to my extremely high anxiety. I was also concerned about the anger the I would have from an unjust sentence. As I stated in my letter to the Court, I am seeking therapy and continued medication to address my anger. In reality, I do not believe that I am capable of committing violence. I have never harmed anyone before. I am thinking about leaving country after I complete my supervised release.

9. Agent Tobin referenced a phone conversation where I stated that it was a mistake not what I was in jail for but because I did not see this coming. The context for this statement was that I had been thinking about moving to Florida prior to my arrest. I believed that if I had moved to Florida, I would not have gotten in trouble.

10. As Agent Tobin stated, I have made many thousands of phone calls to my grandmother and mother while in jail. I have often felt anger and anxiety which I had a need to vent. Many of my statements are not rational but I also do not really mean them. I do not deny having anger at the government, but my venting allows me to express my feelings and not end up feeling a need to carry out any acts of violence. As previously

stated, I have never committed violence and in reality do not see myself committing any violence.

11. It should be noted that after my juvenile offense, I fully complied with the conditions of probation. As agent Tobin stated in her testimony, I did not acquire any firearms until after my probation has been completed since I was prohibited from having firearms while on probation. I also took conceal and carry courses in both Minnesota and Florida with the intent of being able to legally own guns. I have tried to be law-abiding. I will also follow the conditions of my supervision after I am released from prison.

12. I will also take this opportunity to briefly address the testimony by Dr. Gibson. Her testimony does not seem at all relevant because she testified that only a trained person can evaluate if a person has gone through the six stages of the pathway to violence and no trained person has evaluated me, and because she testified that PIV is used as tool for intervention and not to make a legal determination whether someone is dangerous. However, I have only gone through Stage 1 grievance. I have not had any specific violent fantasies, I have not done specific research and planning, have not done any preparation for a violent attack, have not done probing and breaching, and have not made any attack.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on this __29th__ day of __January__, 2024.

River William Smith

5